UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT LONDON**

| | |
|---|---|
| ROBERT GAHL, | ) |
| | ) |
| Plaintiff, | ) Action No. 6:15-CV-00125-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security | ) |
| | ) |
| Defendant. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 11, 12) on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court. Plaintiff has also requested leave to file his brief out of time [DE 10], which will be granted.

ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)(citing 20 C.F.R. § 404.1520(1982)).

## II.

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI), alleging disability beginning on October 24, 2011 (AR at 175-83). His applications were denied initially and on reconsideration (AR at 112-15). Plaintiff pursued and exhausted his administrative remedies before the Commissioner (AR at 24-49 (hearing), 10-19 (decision), 1-3 (Appeals Council denial of review of ALJ

decision)). This case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### III.

Plaintiff was 35 years old at the time he claims he became disabled (see AR at 18). He completed 9th grade in school, obtained his GED, and took certified nurse's assistant (CNA) courses (AR at 509). He worked in the relevant past as a CNA, trash collector, and excavation machine operator (AR at 18, 224). Plaintiff originally alleged disability due to fibromyalgia, degenerative disc disease, past right ankle surgery, a broken left foot, bad knees, right hip pain, right shoulder pain, and "confusion" (AR at 203); he now also alleges disability due to mental impairments, including depression, borderline intellectual functioning, anxiety, and bipolar disorder (see Plaintiff's Brief (Pl.'s Br.) at 8).

Prior to Plaintiff's October 2011 alleged onset of disability, Plaintiff went to Wabash County Hospital in Wabash, Indiana, at least once a year from 2004 through 2010 with various complaints, including congestion, chest tightness, a left hand laceration, a hernia repair, abdominal pain, and a left foot injury (see generally AR at 291-477). An October 2009 MRI of his lumbar spine showed disc protrusion in one area with no stenosis or narrowing (AR at 300), and an MRI of his left foot showed some bone fragment and cystic changes (AR at 289). Also prior to

Plaintiff's alleged onset of disability, he saw nurse practitioner Barbara Starry at One Warsaw Medical Clinic four times in late 2010 and the first half of 2011 for foot pain (AR at 482-97).

In October 2011, Plaintiff saw Jon Karl, M.D., where an examination revealed normal gait; grossly intact sensation; normal motor strength; a nontender spine; no fibromyalgia tenderpoints; limited spine flexion with lumbar pain but a full range of motion on spine extension; and left foot tenderness with palpation (see AR at 479-81). Plaintiff returned to Dr. Karl four months later—in February 2012—and an examination showed the same (AR at 499-501).

Plaintiff began seeing nurse practitioner Joan Gripshover for follow up on his degenerative disc disease and claims of fibromyalgia. He saw her approximately once a month through the remainder of 2012 (*see generally* AR at 514-30). Right foot, ankle, and leg x-rays showed no acute fractures but evidence of past surgical hardware in his right ankle (AR at 528-30). Ms. Gripshover's notes indicate that she diagnosed Plaintiff with chronic low back pain, depression, bipolar disorder, and post-traumatic stress disorder (PTSD) (AR at 514-30).

In December 2012, Plaintiff went to the Anne Wasson Clinic for follow-up once a month through February 2013. The notes of these visits are handwritten and difficult to read at best (AR at 555-58) but indicate continuing treatment for the same body of

4

ailments. Finally, in March 2013, Plaintiff began going to the Primary Care Centers of Eastern Kentucky, where he went once a month through June 2013. Providers there diagnosed thoracic spine pain, osteoarthritis, and fatigue (AR at 548-55). None of these health care providers assessed Plaintiff for work limitations.

Then, in April 2012, Andrew Koerber, M.D., performed a consultative evaluation of Plaintiff in connection with his disability application (AR at 502-08). The examination showed normal posture and gait; no difficulty getting on and off the examination table; no leg swelling; intact nerves; full (5/5) strength in arms and legs; decreased sensation along the lateral side of his right leg; normal reflexes; an ability to squat, toe, and tandem walk without difficulty but mild difficulty performing a heel walk; and decreased lumbar spine flexion and decreased dorsiflexion of the right ankle but no other limitations throughout (AR at 504-05). Dr. Koerber diagnosed back pain and a prior right ankle injury (AR at 505). He opined that Plaintiff could perform activities that involved sitting, standing, moving about, performing gross manipulation and gripping, and lifting and carrying objects up to 20 pounds, but would have difficulty lifting or carrying objects greater in weight (AR at 505-06).

The next month, Emily Skaggs, Psy.D., performed a psychological evaluation of Plaintiff in connection with his disability application (AR at 509-13). Plaintiff reported problems

mostly physical in nature to Dr. Skaggs, but added that he experienced "episodes where there is like an explosion in my mind and I don't know where I'm [*sic*]" (AR at 509). He denied any current psychiatric treatment and a mental status examination was largely normal (AR at 510-12). She diagnosed mood disorder and possible ("rule out") psychotic features and cognitive disorder, as well as noted that he had experienced physical abuse as a child (AR at 512). Following what was otherwise a largely normal examination, Dr. Skaggs opined that Plaintiff would have moderate limitations in understanding, remembering, and carrying out instructions toward the performance of simple repetitive tasks; marked limitations in tolerating stress and pressures of day-to-day employment; moderate limitations in sustaining attention and concentration toward performance of simple repetitive tasks; and moderate limitations in responding appropriately to supervisors and coworkers in a work setting (AR at 512-13).

In June 2012, state agency psychologist Mary Thompson, Ph.D., reviewed Plaintiff's medical records and opined that he could understand and remember simple and detailed instructions and procedures; sustain attention, concentration, and pace for simple tasks within regular tolerances; interact with peers and supervisors sufficiently for task completion on at least an occasional basis with the public; and adapt to work demands and situational changes given reasonable support (*see* AR at 59-61).

6

Another state agency psychologist, Jill Rowan, Ph.D., later reviewed Plaintiff's medical records and largely agreed with Dr. Thompson's opinion, but added that Plaintiff would work best in an environment that did not involve working with others or the general public (AR at 90-92). In October 2012, state agency physician Carlos Hernandez, M.D., reviewed Plaintiff's medical records and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit and stand/walk six hours each in an eight-hour workday; occasionally operate bilateral foot controls and climb ladders, ropes, and scaffolds, but frequently perform other postural movements; and should avoid concentrated exposure to hazards (AR at 87-90).

The next month, Michelle Amburgey, M.A., performed a psychological assessment of Plaintiff at the request of his attorney (AR at 531-36). Plaintiff reported a history of horrific sexual and physical abuse and abandonment as a child to Dr. Amburgey, as well as that he finished 9th grade, but he did not report that he obtained his GED or took CNA courses to her (AR at 533). Dr. Amburgey performed intelligence testing and found that he had a full scale IQ score of 61, placing him in the mild range of mental retardation (AR at 534). She also assessed him with an eighth grade reading level. She diagnosed bipolar and anxiety disorders but ruled out dissociative identity disorder (AR at 536). Dr. Amburgey opined that Plaintiff could complete activities of

daily living and comprehend and follow through with basic instructions, but that he would not be able to complete more complex tasks due to limited intellectual functioning (AR at 535).

Finally, in February 2012, Robert Hoskins, M.D., performed a one-time examination of Plaintiff at the request of his attorney (AR at 540-45). The examination showed right ankle swelling, right shoulder pain, and an unsteady gait, but otherwise largely normal findings (AR at 542). After completing this examination, Dr. Hoskins opined that Plaintiff could lift and carry 20 to 25 pounds infrequently and 10 to 15 pounds occasionally; stand or walk 15 to 20 minutes at a time for two hours total in an eight-hour workday; sit for one hour at a time; never climb or balance and rarely stoop, crouch, kneel, and crawl; had limitations reaching and handling; and should avoid all environmental conditions except noise and humidity (AR at 537-39, *see also* AR at 542-43).

ALJ Bonnie Kittinger ultimately concluded that Plaintiff had some severe impairments (degenerative disc disease, degenerative joint disease, past right ankle surgery, and depression) (AR at 12) but that Plaintiff could nonetheless perform a range of simple, light work (AR at 16). The ALJ specified that Plaintiff could perform light work (requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently) that involved occasionally performing of all postural activities but never climbing ladders, ropes, or stairs; required avoiding concentrated exposure to

8

hazards; and allowing for the ability to alternate between sitting and standing every 45 to 60 minutes (AR at 16). The ALJ also found that Plaintiff could perform simple, routine and basic tasks that involved occasionally interacting with co-workers and supervisors (but not the public) and adapting to changes that were gradually introduced (AR at 16). Based on vocational expert testimony (*see* AR 45-47) in response to a hypothetical question with these same limitations, she concluded that Plaintiff could not perform any of his past work, but could perform other that existed in significant numbers in the national economy (AR at 18-19). Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act (AR at 19).

## III.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept." *Foster*, 279 F.3d at 353.

**IV.**

Plaintiff argues that the ALJ erred in weighing the various medical opinions in the record in order to reach the conclusion that, despite his physical and mental impairments, he retained the residual functional capacity to perform a reduced range of simple, light work. [AR at 10.] The Court concludes, as explained below, that the ALJ did not err and that, in fact, the decision of the ALJ is supported by substantial evidence in the record of this matter.

The responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545. The ALJ considers numerous factors in constructing a claimant's residual functional capacity, including the medical evidence, the non-medical evidence, and the claimant's credibility. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (unpublished). The ALJ resolves conflicts in the evidence and incorporates only those limitations that she finds credible in the residual functional capacity assessment. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234-35 (6th Cir. 1993). Where there are conflicts regarding the evidence, the ALJ's findings of credibility are entitled to great deference. *See Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (unpublished) (citing *King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984)).

As an initial matter, the Court rejects Plaintiff's argument that, on the evidence of record, he is limited to sedentary work by his physical impairments alone and that the ALJ failed to reach a decision supported by the record. As a practical matter, the residual function capacity of limited, light work assigned by the ALJ largely if not entirely tracked the physical limitation recommendations of the two examining physicians, Drs. Hoskins and Koerber. Plaintiff has pointed to no evidence to support a contrary conclusion and the Court declines to consider this matter further. To the extent that Plaintiff argues that the ALJ erred in discounting examining consulting physician Dr. Hoskins' opinion because it was internally inconsistent – which assessment Plaintiff does not counter in his brief – and based largely on Plaintiff's subjective complaints, the ALJ did so reasonably. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) ("Dr. Sonke's conclusion regarding the amount of weight that Warner could lift regularly appears to be based not upon his own medical conclusion, but upon . . . Warner's own assessment of his weight-lifting limitations.").

Next, Plaintiff complains that the ALJ failed to include limitations which reflected the findings in the evaluation

11

conducted by examining psychologist Dr. Skaggs, who concluded that claimant had marked limitations or was severely limited in his ability to tolerate stress and the pressure of day to day employment. He argues as well that the ALJ also failed to include those limitations proposed by Michelle Amburgey, M.A., who Plaintiff with bipolar disorder, mild mental retardation, and anxiety order, assessing a GAF of 50 and a full scale IQ of 61. Based on those conclusions, she opined that he would not be a dependable employee, would have unpredictable behavior, and that he appeared not to be in control of his mood. The results of the testing that she conducted provide the sole evidence concerning his I.Q. – a full scale I.Q. of 61 – and his mild mental retardation.

With respect to his mental abilities, the ALJ assessed Plaintiff with a residual functional capacity that was in line with the state agency psychologists' conclusions that Plaintiff could perform simple and repetitive tasks and adapt to changes in the work setting if they were gradually introduced but could only interact with co-workers and supervisors occasionally and never interact with the general public. Thus, the ALJ rejected Ms. Amburgey's conclusions regarding Plaintiff's abilities in part because Plaintiff provided an account of his history that was not reflected elsewhere in the record and his failure to advise Ms. Amburgey that, while he had quit school in the ninth grade, he had

12

obtained his GED and taken CNA classes, which indicated greater abilities than simply dropping out of school. The ALJ further noted that while Dr. Amburgey's testing indicated that Plaintiff's full scale IQ score fell in the range associated with mild mental retardation, she also assessed him as reading at an eighth grade level. The ALJ properly considered, as well, that Plaintiff denied attending special education courses during the course of his school work, undermining the test results obtained by Ms. Amburgey, and that Ms. Amburgey looked only at Plaintiff's physical medical records, not those that were mental in nature. In other words, the ALJ's conclusion that Amburgey's opinion was based on subjective complaints and was inconsistent with the record as a whole, is grounded in objective evidence and is part of the errand assigned to the ALJ. *See* 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole). Similarly, the Court cannot say that the ALJ erred in declining to fully adopt Drs. Skaggs or Amburgey's assessments as her own in light of the inconsistency between her largely normal examination findings which provided little objective evidence to support the marked limitations that she believed him to possess.

Ultimately, the Court agrees with the Commissioner that, the ALJ adequately explained and justified his determination. In light of the minimal treatment notes and the records in the administrative transcript of this matter, including the medical

sources, that is enough. The Commissioner's decision denying benefits is supported by substantial evidence because she developed an RFC which reflected the evidence of record and based her opinion on the testimony of VE which was responsive to a hypothetical question which reflected that RFC. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) ("[T]he Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy."). The Court affirms the decision.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) That Plaintiff's Motion for an Extension of Time [DE 10] to file his brief is **GRANTED** and that his Motion for Summary Judgment is deemed timely filed;

2) that Plaintiff's Motion for Summary Judgment (DE 11) is **DENIED** and

3) that Defendant's Motion for Summary Judgment (DE 12) is **GRANTED**.

This the 29th day of September, 2016.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge